**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 03-20592-CIV-GOLD/Turnoff**

LUIS VEGA,

      Plaintiff,

vs.

CRUISE SHIPS CATERING AND
SERVICE INTERNATIONAL, N.V.,
PRESTIGE CRUISES N.V., and
COSTA CROCIERE, S.P.A.,

      Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

**THIS CAUSE** is before the Court upon the following motions: Plaintiff's Combined Motion to Reinstate Case **[DE 188]**; Defendant's Motion for Clarification of Order Vacating Order Correcting Docket and Granting Plaintiff's Supplemental Combined Motion to Reinstate Case **[DE 199]**; Plaintiff's Motion to Strike Affidavit of Marco Lopez de Gonzalo Which was Filed by Defendant in Violation of the Local Rules of Civil Procedure **[DE 206]**; Plaintiff's Motion for Leave to File Affidavit of Attorney Michael F. Guilford **[DE 214]**; and Plaintiff's Motion for Leave to File Affidavit of Attorney Attilio Costabel in the Event the Untimely Affidavit of Marco Lopez de Gonzalo is not Stricken **[DE 216]**.  These matters were referred to the undersigned by the Honorable Alan S. Gold, District Court Judge for the Southern District of Florida **[DE 192, 201, 207, 219]**.  A hearing on these motions was held on February 9, 2007.  The Court has considered the written and oral arguments, the applicable law, the court file, and is otherwise duly advised in the premises.

Luis Vega v. Cruise Ships Catering and Service Int'l, N.V., Prestige Cruises, N.V., and Costa Crociere, S.P.A.
Case No. 03-20592-CIV-GOLD/Turnoff

## Background

Plaintiff, a seaman, filed a six-count Complaint against Defendants alleging, *inter alia*, Jones Act  negligence, unseaworthiness, and failure to provide maintenance and cure.  Plaintiff alleged that, on or about September 23, 1996, while onboard Defendant's vessel, he sustained physical injuries when he fell from the top bunk-bed in his cabin.

On September 28, 2005, Judge Gold dismissed Plaintiff's case on *forum non conveniens* ("FNC") grounds.  See Order **[DE 179]**.  The Order provided: "[T]he case is DISMISSED without prejudice to the Plaintiff's ability to re-file this action in an alternative forum or to reinstate his action in this Court if no alternative fora accepts his case."  **[DE 179]** at 22.  The alternative fora in this case are Colombia, Italy, and the Netherlands Antilles as follows:  Plaintiff is native to Colombia; the flag of the ship on which the incident occurred is Italian; and the Defendant's principal place of business is Italy and/or the Netherlands Antilles.

## Plaintiff's Combined Motion to Reinstate Case [DE 188].

On August 4, 2006, Plaintiff filed the instant Combined Motion to Reinstate Case **[DE 188]** arguing mainly that the financial burden prevented him from bringing his case in the alternative fora.  Plaintiff attached his affidavit representing that he could not "afford to hire an attorney by the hour or pay court costs" and that his assets were limited to $21 in cash and $800 in a savings account.  See **[DE 188]** at Exhibit A.  A second affidavit further provided that he had contacted law firms in the Netherlands Antilles, Colombia, and Italy and that none would represent him on a contingency fee basis.  Id.  Plaintiff further

argued that other seamen cases against the same Defendants have been dismissed on FNC grounds and have not been adjudicated in alternative fora due to the high cost of proceedings in other countries.  In support, Plaintiff attached the affidavits of other plaintiffs who had sued Defendants and had their cases dismissed on FNC grounds.  They represented that they were not able to afford to bring their cases in the alternative fora.  Plaintiff also attached the affidavits of attorneys who had represented other plaintiffs against Defendants and had their cases dismissed on FNC grounds.  They argued that the practical consequence of the FNC dismissals was to deny plaintiffs their day in court.  Finally, Plaintiff argued that seamen are wards of the court and are accorded special status and protection under federal maritime law.  According to the  Shipowners' Liability Convention of 1936, there is a strong policy of ensuring equality of treatment to all seamen and of securing rapid and inexpensive settlement of their cases.  Because FNC dismissals are conditional, the Court should consider these arguments in determining whether to reinstate the case in U.S. District Court.

The inquiry here is whether the alternative fora are adequate.  However, Plaintiff's main argument focused not on the adequacy of the alternative fora, but rather on the claim that they were financially unavailable to him.  He claimed that the alternative fora did not allow contingency fee agreements and that he lacked the funds to pay a retainer or court costs.  Without an attorney, he would not be able to bring his case against Defendants.  Thus, the practical effect of the FNC dismissal was to leave Plaintiff without an affordable forum to redress his rights.  However, this does not mean that the fora are unavailable

and/or inadequate.

Defendants filed a Response **[DE 195]** arguing that Plaintiff's financial inability to retain an attorney in the alternate fora did not justify reinstatement of the case in U.S. District Court.   Defendants attached the affidavit of Laurence A. Klutz, president of International Risk Services, who provided claims administration services to Defendants in the handling of crew medical claims.  See **[DE 195]** at Exhibit A.  His affidavit tracked the settlement of various claims against Defendants in other fora.   In addition, on September 25, 2006, Defendants filed an order, entered on July 18, 2006, by the Honorable Michael Moore, in the case of <u>Lisa, S.A. v. Mayorga</u>, in which the Court granted the defendants' motion to dismiss on the basis of FNC but without prejudice to reinstate should the plaintiff be unable to file the case in Guatemala **[DE 198]**.

On September 27, 2006, after Defendants had filed their Response to the Motion to Reinstate, Plaintiff filed the affidavit of an Italian attorney, Attilio M. Costabel (the "Costabel affidavit") **[DE 200]**.  The Costabel affidavit set forth that the Italian legal system did not allow for contingency fee agreements between attorneys and clients.  On October 18, 2006, after Plaintiff had filed its Reply **[DE 205]** to the Motion to Reinstate, Defendants filed the affidavit of another Italian attorney, Marco Lopez de Gonzalo (the "Lopez de Gonzalo affidavit") **[DE 204]**.  The Lopez de Gonzalo affidavit directly contravened the claims set forth in the Costabel affidavit.

<u>Luis Vega v. Cruise Ships Catering and Service Int'l, N.V., Prestige Cruises, N.V., and Costa Crociere, S.P.A.</u>
Case No. 03-20592-CIV-GOLD/Turnoff

**Plaintiff's Motion to Strike Affidavit of Marco Lopez de Gonzalo Which was Filed by Defendant in Violation of the Local Rules of Civil Procedure [DE 206]**.

Plaintiff filed a Motion to Strike Affidavit of Marco Lopez de Gonzalo **[DE 206]**, arguing that Defendants had filed it in violation of Local Rule 7.1(C), which provided that leave of court was required to file additional documents other than a response and a reply.[1]   Plaintiff cited several cases in which courts purportedly have not considered additional affidavits filed without prior leave.  Defendants argued that Plaintiff's late filing of the Costabel affidavit worked effectively to prevent them from discrediting the incorrect references to Italian law set forth therein.

It seems that both parties filed their respective affidavits in such a way that it precluded the other party from disputing the allegations contained therein.  As such, the undersigned orders that Plaintiff's Motion to Strike **[DE 206]** be **Denied**.

**Plaintiff's Motion for Leave to File Affidavit of Attorney Attilio Costabel in the Event the Untimely Affidavit of Marco Lopez de Gonzalo is not Stricken [DE 216]**.

In conjunction with this matter, Plaintiff filed a Motion for Leave to File Affidavit of Attorney Attilio Costabel in the Event the Untimely Affidavit of Marco Lopez de Gonzalo is not Stricken **[DE 216]**.  Plaintiff sought to file a second Costabel affidavit addressing the

---

[1]Rule 7.1(C)(3) states:
> To the extent a party wants the Court to consider affidavits, declarations, or other materials in support of or in opposition to the motion, then: (a) the movant must serve with the motion all such materials; and (b) the opposing party must serve with the opposing memorandum all such materials in opposition to the motion.  The movant may serve a reply memorandum with affidavits, declarations, or other materials provided that all such materials are strictly limited to rebuttal of matters raised in the opposing memorandum.

points set forth in the Lopez de Gonzalo affidavit.  The undersigned orders that this Motion

be **Denied**.  The parties are engaged in an exchange of affidavits whose main purpose is

to address an issue–whether Italian law permits contingency fee agreements–that the

undersigned finds ultimately to be non-dispositive, as discussed *infra*, of the inquiry in this

case: the adequacy of the alternative fora.

**Plaintiff's Motion for Leave to File Affidavit of Attorney Michael F. Guilford [DE 214].**

On November 22, 2006, Plaintiff filed this Motion for Leave requesting that he be

allowed to file a second Affidavit of Attorney Michael F. Guilford in order to address the

statements made in the Klutz Affidavit filed by Defendants in support of their Response to

the Motion to Reinstate.  On November 28, 2006, the undersigned entered an Order **[DE

220]** allowing Plaintiff to conduct limited discovery related to the allegations contained in

the Klutz affidavit.[2]  As such, the undersigned finds that Plaintiff's Motion for Leave should

be **Granted**.

### Lack of Contingency Fee Agreements in Alternative Fora.

According to Plaintiff, the alternative fora do not allow contingent fee agreements.

Defendants disputed this point at least with respect to Italy.[3]  As discussed *supra*, the

parties directed much attention to the filing of opposing affidavits disputing whether

---

[2]On January 3, 2007, the undersigned entered another Order **[DE 234]** allowing Defendants to conduct limited discovery as to the affidavits filed in support of Plaintiff's Motion to Reinstate.

[3]Plaintiff's contention that the other countries did not allow contingency fee agreements was not addressed or opposed by Defendants.

contingency fee agreements were allowed in Italy.   The focus is properly directed, however, to assessing the adequacy of the alternate fora.  It is Plaintiff's burden to show that the alternative fora are inadequate.  Rivas ex rel. Estate of Gutierrez v. Ford Motor Co., Not Reported in F.Supp.2d, 2004 WL 1247018, 6 (M.D. Fla. 2004).  In fact, the majority of courts reviewing a plaintiff's ability to litigate in a foreign forum consider the absence of a contingency fee arrangement as one of the balancing factors in an FNC analysis, not as an argument against availability of an alternative forum.  Kristoff v. Otis Elevator Co., Not Reported in F.Supp., 1997 WL 67797, 2 (E.D.Pa. 1997).

Plaintiff's main argument is that the fora are financially unavailable to him due to the lack of contingency fee arrangements.  Plaintiff cited cases in which other courts have deemed the inability to retain counsel in a foreign jurisdiction as rendering the alternative fora unavailable for purposes of FNC.  None of the cases were binding authority except for Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528 (1995), which dealt with the enforcement of foreign arbitration clauses. In Vimar, the plaintiff argued that the cost and inconvenience of traveling thousands of miles, if the foreign arbitration clause at issue were to be enforced, lessened or weakened its ability to recover.  In rejecting this argument, the Supreme Court analyzed the interplay between the aims of the Carriage of Goods by Sea Act, the Brussels Convention for the Unification of Certain Rules Relating to Bills of Lading, and the Federal Arbitration Act.  They enforced the foreign arbitration clause finding that it would not limit defendant's liability or lessen plaintiff's ability to recover.  Thus, in actuality, Vimar lends weight in opposition to Plaintiff's argument.

There are binding cases holding that the availability of contingent fee arrangements is not dispositive in an FNC analysis.  See Homen v. M/V SCM TEPUY II, 2006 WL 3626301 (S.D. Fla. 2006)(the unavailability of a contingent fee arrangement in a foreign forum is a permissible but inconclusive factor to consider in a *forum non conveniens* analysis); Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1430 (11th Cir. 1996)(since most other nations do not have contingency fee systems, this factor should not be dispositive).  In Magnin v. Teledyne Continental Motors, the Eleventh Circuit explained that, "as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, [the plaintiff] has not cited to us any Supreme Court or court of appeals decision giving such considerations substantial weight in forum non conveniens analysis." Id.

The case of Colantonio v. Hilton Intern. Co., Not Reported in F.Supp.2d, 2004 WL 1810291(E.D. Pa. 2004), although not binding upon this Court, presented circumstances similar to the case at bar.  There, the plaintiffs argued that, since Italy did not allow contingency fees, they would be unable to litigate the case if it was dismissed by the court.  While the court agreed that the lack of contingency fees had been considered by other courts as a factor to be weighed in a *forum non conveniens* motion, it chose not to consider it as a factor weighing against dismissal under the facts of the case.  The court noted that, aside from the assertion that they would be unable to hire an attorney in Italy, the plaintiffs' offered no additional facts to support their claim. Thus, it was unlike other cases which found that a lack of a contingency fee system was to be considered as a

factor.  For example, in Fiorenza v. U.S. Steel Int'l, Ltd., 311 F.Supp. 117 (S.D.N.Y.1969), the court was presented with evidence that the plaintiff was impecunious, unable to work since the accident, and depended upon his brother for support. Id. at 120.

Indeed, Plaintiff cited Fiorenza for the proposition that the prospective unavailability of the alternate forum outweighed the factors of convenience.  The Fiorenza plaintiff was a non-citizen and non-resident of the United States alleging a foreign-based tort against a corporation that had its principal place of business within the jurisdiction of the federal district court. Id. at 118.  The plaintiff argued that he would be unable to bring action in the Bahamas, because contingent fee agreements for tort claims were unlawful there, thus necessitating the payment of a retainer. Id. at 120.  Further, the plaintiff argued that, even though the defendant had agreed to submit to the jurisdiction of the Bahamian courts, there was no assurance that said courts would accept jurisdiction of a claim of a non-citizen suing a foreign corporation.  In addition, plaintiff indicated that there were issues regarding his entry permit which could compromise his ability to remain or to re-enter the Bahamas for the purpose of carrying on his lawsuit. Id.  The defendant countered that many other factors weighed in favor of dismissal, because the parties, the witnesses, and the evidence were all in the Bahamas, and Bahamian law was applicable. Id.  The court found that the prospective unavailability of the alternate forum outweighed the other factors. Id. at 121.  It held that, "[w]hen the alternate forum is not truly available for any reason, as in the instant case, the doctrine of forum non conveniens will not be applied to dismiss the action." Id.

The undersigned believes that the Fiorenza Court was persuaded by the particular set of circumstances presented by that plaintiff.  The factors in the instant case differ significantly.  Here, Plaintiff has not alleged that the foreign courts do not recognize Plaintiff's cause of action or that they provide an inadequate remedy.  Neither has Plaintiff alleged that Defendants would not be amenable to the jurisdiction of the foreign courts. Finally, Plaintiff has not alleged any problems with his immigration status that would preclude him from prosecuting his case in a foreign country.  In fact, nowhere has plaintiff alleged that the alternate fora are in any way unequipped to handle a case such as his or that they would decline to do so.  Plaintiff's only argument is that he is financially unable to retain an attorney and pay court costs in the foreign fora.  That alone is insufficient to render the alternate fora unavailable.  The burden is on Plaintiff to show that the alternative fora are inadequate.  Rivas, 2004 WL 1247018 at 6.  The undersigned finds that Plaintiff has failed to meet this burden.  As such, the undersigned recommends that Plaintiff's Motion to Reinstate be **Denied**.

### Timing of Defendant's Settlement Negotiations.

Plaintiff claimed that other plaintiffs who had their cases dismissed on FNC had not been able to proceed in foreign fora.  Defendants sought to discredit this contention by showing that they had already negotiated settlements with some plaintiffs and were in the process of finalizing settlements with other plaintiffs and/or their foreign attorneys. Plaintiff argued that Defendants only began settling cases that were pending in the alternate fora after Plaintiff filed its Motion to Reinstate.  Plaintiff argued that the Klutz affidavit showed

the real world consequences of FNC dismissals, because, if the settlement negotiations were examined further, they would show that lawsuits either were not filed or were not prosecuted in the alternative fora.

The undersigned finds that, regardless of whether other plaintiffs in similar cases against Defendants in other countries have not been able to seek redress due to financial hardship, regardless of whether Plaintiff's Motion to Reinstate sparked a series of settlement negotiations on Defendants' part, and regardless of the many affidavits filed with respect to Italian law, the fact remains that Plaintiff has failed to prove to this Court how the alternate fora are inadequate.

### Defendant's Motion for Clarification of Order Vacating Order Correcting Docket and Granting Plaintiff's Supplemental Combined Motion to Reinstate Case [DE 199].

On September 14, 2006, Judge Gold entered an Order Granting Plaintiff's Motion to Vacate the Order Correcting Docket and Granting Plaintiff's Supplemental Combined Motion to Reinstate Case **[DE 196]** and granting Plaintiff's Supplemental Combined Motion to Reinstate Case. These motions do not appear on the docket. Apparently, the Supplemental Motion was filed merely to include Exhibits A-F that had been attached to **[DE 187]**, which had been deemed moot by Judge Gold on August 31, 2006. See Order Correcting Docket **[DE 194]**. Judge Gold did not grant the Motion to Reinstate substantively, but the language of the Order was unclear. As a result, the Clerk re-opened the case. Defendants then filed the pending Motion for Clarification of Order Vacating Order Correcting Docket and Granting Plaintiff's Supplemental Combined Motion to

Reinstate Case **[DE 199]** on September 25, 2006.  The Order of Reference **[DE 201]** for

the Motion for Clarification indicated that the Motion for Clarification was to be considered

along with the previously referred Motion to Reinstate.  This supported the fact that Judge

Gold had not granted substantively the outstanding Motion to Reinstate in his Order of

September 14, 2006.  The case should not have been re-opened on September 14, 2006,

because Plaintiff's Motion to Reinstate Case was still pending.  On December 29, 2006,

Judge Gold entered an Order **[DE 230]** administratively closing the case until resolution

of the pending Motion to Reinstate. Therefore, Defendants' Motion for Clarification should

be **Deemed Moot**.

## Recommendation and Orders

For the reasons stated above, the undersigned respectfully recommends and/or

orders that:

1.      Plaintiff's Combined Motion to Reinstate Case **[DE 188]** be **Denied**;

2.      Defendant's Motion for Clarification of Order Vacating Order Correcting

Docket and Granting Plaintiff's Supplemental Combined Motion to Reinstate Case **[DE

199]** be **Deemed Moot**;

3.      Plaintiff's Motion to Strike Affidavit of Marco Lopez de Gonzalo Which was

Filed by Defendant in Violation of the Local Rules of Civil Procedure **[DE 206]** be **Denied**;

4.      Plaintiff's Motion for Leave to File Affidavit of Attorney Michael F. Guilford

**[DE 214]** be **Granted**; and

5.      Plaintiff's Motion for Leave to File Affidavit of Attorney Attilio Costabel in the

Event the Untimely Affidavit of Marco Lopez de Gonzalo is not Stricken **[DE 216]** be

**Denied**.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections with the Honorable Alan S. Gold, United States District Judge for the Southern District of Florida, within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993), reh'g denied, 7 F.3d 242 (1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 16th day of February 2007.

_____
**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

Copies provided:
Honorable Alan S. Gold
Counsel of Record